ALEXANDER B. CVITAN (SBN 81746),
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720), and
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399),
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>LUCKY WATER TRUCKS, LLC., a California Limited Liability Company,<br><br>Defendant. | CASE NO.:<br><br>COMPLAINT FOR:<br><br>1. MONETARY DAMAGES OF UNPAID FRINGE BENEFIT CONTRIBUTIONS AND RELATED DAMAGES DUE TO EMPLOYEE BENEFIT PLANS;<br>2. MONETARY DAMAGES FOR BREACH OF SETTLEMENT AGREEMENT;<br>3. SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT<br><br>[29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185; 28 U.S.C. § 1367(a)] |

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

**INTRODUCTION**

1. This action is brought by a fiduciary administrator on behalf of employee benefit plans against: an employer. It is brought in accordance with the terms and conditions of the plans, the collective bargaining agreements to which the

-1-

313808.1

employer is bound, a settlement agreement (between the plans and the employer), and applicable statutes to: (a) recover unpaid monthly employee fringe benefit contributions and related damages due to the plans by the employer, including through enforcement of the terms of the collective bargaining agreements and the plans (Claim 1), the settlement agreement (Claim 2); and (b) compel the employer to produce records for an audit to determine if additional amounts are due (Claim 3).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Claims 1 and 2 pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185). This Court has supplemental jurisdiction over Claim 3 pursuant to 28 U.S.C. § 1367(a). Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

## PARTIES

3. Plaintiff ("CLTF") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of, the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California and

-2-

313808.1

Southern California Partnership For Jobs Industry Advancement Fund (collectively "TRUST FUNDS").  Each of the TRUST FUNDS is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the TRUST FUNDS exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186).  CLTF and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

4. CLTF is informed and believes, and on that basis alleges, that defendant LUCKY WATER TRUCKS, LLC., ("EMPLOYER") is a limited liability company organized and existing under the laws of the State of California; has a principal place of business in the City of Leona Valley, County of Los Angeles, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

## AGREEMENTS

5. In order to work on a project covered by a Project Labor Agreement known as the "Stateline Solar Project Worksite Agreement" ("Solar Project Agreement") between First Solar Electric (California) Inc., and the Southern California District Council of Laborers' affiliated local union, Laborers Local Union 783 ("UNION"),  EMPLOYER executed an Agreement to be Bound to the Solar Project Agreement.  The Solar Project Agreement incorporates by reference the UNION's Construction Master Labor Agreements ("MLA") including one known as the Southern California Master Labor Agreement relating to the coverage of work, payment of wages to employees, and payment of their Monthly Contributions to the TRUST FUNDS, among other things.  At all times material herein, EMPLOYER has been and continues to be bound by the labor agreements relating to work on projects covered by the Solar Project Agreement.

-3-

313808.1

6.	Pursuant to the Solar Project Agreement, Agreement to be Bound, and MLA, EMPLOYER became obligated to all the terms and conditions of the various Trust Agreements which created each of the TRUST FUNDS as they may be constituted in their original form or as they may be subsequently amended. The referenced Agreements will be collectively referred to as "Agreements".

7.	The Agreements obligate employers, including EMPLOYER to pay fringe benefit contributions ("Monthly Contributions") at the rates set forth in the Agreements for each hour worked (or paid for) by employees performing services covered by the Agreements ("Covered Work".)  EMPLOYER is additionally required to submit monthly reports ("Monthly Reports") with these Monthly Contributions, detailing the name, address, social security number and hours worked that month for each employee covered by the Agreements and those Monthly Reports are required to be submitted even where there are no employees to report for the reporting period. The TRUST FUNDS depend on the truth and accuracy of this information, in order to not only determine the correct amount of Monthly Contributions due, but to fulfill their own fiduciary duties to properly credit participants towards the benefits provided by the TRUST FUNDS. Those Monthly Contributions constitute assets of the TRUST FUNDS, pursuant to the terms of the AGREEMENTS and applicable law, from the time they are due and can be reasonably segregated from other funds. The Trustees of the TRUST FUNDS have a fiduciary duty to marshal those assets so that they may be applied for the benefit of the participants and beneficiaries in accordance with the various Trust Agreements.

8.	The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the TRUST FUNDS. The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California. The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of

twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.

9. The failure of employers to pay Monthly Contributions when due causes damages to the TRUST FUNDS and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes the cost of collecting the Monthly Contributions from employers or third parties, the cost of special processing to restore employee fringe benefit credits because of late Monthly Contributions, employee loss of health insurance coverage (even if later restored) and medical harm to participants and beneficiaries who might have foregone medical care when notified that their insurance ceased because of their employer's failure to pay Monthly Contributions.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the TRUST FUNDS, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the TRUST FUNDS' ratio of collection costs over amounts collected, which are regularly reported to the TRUST FUNDS' trustees.   The Trustees of the TRUST FUNDS have the authority, in their discretion, to waive all or part of these liquidated damages.  In this case, they have exercised their discretion by declining to waive any liquidated damages.

10. Under the terms of the Agreements, employers, including EMPLOYER, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity, or allows a subcontractor to subcontract Covered Work to a non-signatory entity, the employer

-5-

1  becomes liable to the TRUST FUNDS in at least an amount equal to the Monthly
2  Contributions, interest and liquidated damages that would have been due if a
3  signatory entity had performed the Covered Work.

4    11. Under the terms of the Agreements, employers, including EMPLOYER,
5  agree not to subcontract Covered Work to entities that are delinquent to the TRUST
6  FUNDS or to allow lower-tier subcontractors to perform Covered Work if they are so
7  delinquent.  If an employer subcontracts Covered Work to an entity that is delinquent
8  in its Monthly Reports or Monthly Contributions to the TRUST FUNDS, or allows a
9  lower-tier subcontractor that is so delinquent to perform Covered Work, the employer
10 becomes under the terms of the Agreements liable to the TRUST FUNDS for the
11 Monthly Contributions due by the delinquent subcontractor and any delinquent
12 lower-tier subcontractors.

13   12. The Agreements provide the TRUST FUNDS with specific authority to
14 examine the payroll and business records of employers, including the EMPLOYER,
15 to determine whether they have reported all hours worked by (or paid for) their
16 employees who perform Covered Work, and whether they have paid the appropriate
17 Monthly Contributions and other amounts due by them to the TRUST FUNDS.  The
18 Agreements further provide that employers, including EMPLOYER, shall pay the
19 TRUST FUNDS' audit fees if they are delinquent to the TRUST FUNDS.  The
20 TRUST FUNDS have delegated the authority to perform such audits to CLTF.

21   13. The Agreements require employers to pay the TRUST FUNDS'
22 attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms,
23 including the Monthly Contribution, Monthly Reporting, subcontracting and audit
24 provisions.

25
26 / / /
27 / / /
28 / / /

-6-

313808.1

## FIRST CLAIM FOR RELIEF

### (Against the EMPLOYER for Monetary Damages of
### Unpaid Fringe Benefit Contributions and Related Damages
### Due to Employee Benefit Plans)

14. CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 above as if fully set forth here.

15. As a result of EMPLOYER'S failure to pay the amounts specified in the AGREEMENTS there is now owing and unpaid to the TRUST FUNDS from EMPLOYER the sum of $13,073.69 in damages, (including $7,162.92 in Monthly Contributions, $4,900.11 in liquidated damages, and $1,010.66 in interest through February 9, 2017 ) ("Known Delinquency") covering time periods from February 2015 to October 2015, plus additional accrued interest at the plan rate(s) currently 6.25% per annum until payment of all contributions are made.

16. CLTF will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the TRUST FUNDS by the EMPLOYER, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYER (or lower-tier subcontractors). If deemed necessary by the Court, CLTF will amend its complaint to add any additional amounts determined to be due. Any and all conditions to the EMPLOYER's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the TRUST FUNDS have been met.

17. Under the terms of the Agreements and Sections 515 and 502(g) of ERISA, EMPLOYER is liable to the TRUST FUNDS not only for the amount of delinquent contributions according to proof but also (a) for pre-judgment interest on

313808.1

the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

## SECOND CLAIM FOR RELIEF
### (Against the EMPLOYER for Monetary Damages for Breach of Settlement Agreement)

18. CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 17 above as if fully set forth here.

19. The TRUST FUNDS (through CLTF) and EMPLOYER entered into a conditional settlement ("Settlement Agreement") with respect to the EMPLOYER's then-known delinquency to the TRUST FUNDS ("Then-Known Delinquency"). In and by the terms of the Settlement Agreement, the TRUST FUNDS agreed to waive a portion of the EMPLOYER's Then-Known Delinquency upon, and conditioned upon, the EMPLOYER's full performance of the terms of the Settlement Agreement, including but not necessarily limited to payment of a portion of the Then-Known Delinquency in monthly installments ("Payment Plan") and compliance with the terms of the Monthly Reporting, Monthly Contribution and audit provisions of the Agreements during a "Compliance Period" extending through the term of the Payment Plan and the date of payment of any delinquent amounts determined to be due by a "Compliance Audit" following remittance of the Payment Plan installments.

20. Under the express terms of the Settlement Agreement, each of the following constitutes a default of the Settlement Agreement by the EMPLOYER: failure to timely remit Payment Plan installments in accordance with the terms of the Settlement Agreement; and failure to, during the Compliance Period, comply with its obligations under the terms of the Agreements to timely submit Monthly Reports disclosing all of the work for which Monthly Contributions are due with payment of

-8-

313808.1

the Monthly Contributions due.

21. Under the express terms of the Settlement Agreement, each of the following constitutes a breach of the Settlement Agreement by the EMPLOYER: (a) failure to cure a default (in the manner expressly established in and by the Settlement Agreement) for failure to timely remit a Payment Plan installment; (b) failure to cure a default (in the manner expressly established in and by the Settlement Agreement) for failure to, during the Compliance Period, comply with its obligations under the terms of the Agreements to timely submit Monthly Reports disclosing all of the work for which Monthly Contributions are due with payment of the Monthly Contributions due; (c) failure to, during the Compliance Period, comply with the obligation under the Agreements to maintain adequate documentation of work performed in order for the TRUST FUNDS to determine through audit whether it has complied with the Monthly Reporting and Contribution requirements of the Agreements; and (d) failure to, during the Compliance Period, comply with the obligation under the Agreements to provide the TRUST FUNDS with full access to its books and records to complete an audit, including but not limited to the Compliance Audit.

22. EMPLOYER breached the Settlement Agreement in at least the following ways: (a) failing, without cure, to timely submit Monthly Reports disclosing all of the work for which Monthly Contributions are due with payment of the Monthly Contributions due; and (b) failing to provide the TRUST FUNDS with access to its books and records to complete the Compliance Audit.

23. As a result of the EMPLOYER's breach of the Settlement Agreement: (a) the conditions in the Settlement Agreement for waiver of a portion the Then-Known Delinquency were not met and the Settlement Agreement does not bar collection of any unsatisfied amounts of that delinquency by any lawful means; and (b) under the terms of the Settlement Agreement, the full amount of the Then-Known Delinquency is immediately due and owing by the EMPLOYER to the TRUST

-9-

FUNDS, minus any Payment Plan installments made plus interest at the TRUST FUNDS' plan rate(s).  The amount due by the EMPLOYER for its breach of the Settlement Agreement is $11,209.48 as of February 9, 2017, plus additional interest thereafter.  Any and all conditions to the EMPLOYER's obligations under the Settlement Agreement to pay this amount have been met.

24.     Under the terms of the Settlement Agreement, CLTF is entitled to an award of its attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### (Against the EMPLOYER for Specific Performance of Obligation to Produce Records for Audit)

25.     CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 24 above as if fully set forth here.

26.     CLTF requested that EMPLOYER produce its books and records for audit.  The EMPLOYER has refused to comply with CLTF's request and has not produced its books and records for audit.

27.     EMPLOYER has a duty under the Agreements and under ERISA to maintain records for an audit by the TRUST FUNDS.  The TRUST FUNDS have no adequate or speedy remedy at law in that all records from which the TRUST FUNDS can ascertain their damages are in the control and/or custody of EMPLOYER and/or its principals; therefore, the only means the TRUST FUNDS have to verify the contributions owed on behalf of EMPLOYER'S employees is to conduct a complete audit of EMPLOYER'S records, and EMPLOYER has failed to comply with the audit.

28.     CLTF requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER to comply with its obligation under the Agreements and ERISA to fully produce its books and records in

order for CLTF to complete an audit to determine if additional amounts are due.

29. Upon completion of the audit sought herein, Plaintiff will seek recovery of any delinquent contributions found due, as well as liquidated damages, audit costs, other damages, interest in addition to attorneys' fees and costs as provided for by AGREEMENTS and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

**WHEREFORE, CLTF prays for judgment as follows:**

### ON CLTF'S FIRST CLAIM FOR RELIEF

1. For $ 7,162.92 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

2. For $1,010.66 in interest through February 9, 2017 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does thereafter accrue as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

3. For $4,900.11 in liquidated damages for each month of unpaid or late-paid Monthly Contributions at, for each of the TRUST FUNDS separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

4 For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, fees incurred by the TRUST FUNDS as a result of the submission of checks not honored by the bank upon which they were drawn, and amounts owed as a result work performed by any subcontractors of the EMPLOYER (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and

313808.1

29 U.S.C. §§ 1132(g)(2) and 1145.

5. For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

6. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON CLTF'S SECOND CLAIM FOR RELIEF

1. For $10,323.18 in principal due under the Settlement Agreement and applicable law, including but not limited to California Civil Code § 3302, and any other damages arising from the EMPLOYER's breach of the Settlement Agreement.

2. For interest in the sum of $886.30 at the TRUST FUNDS' plan rate(s) per annum plus additional accrued interest thereafter from February 9, 2017, pursuant to terms of the Settlement Agreement and applicable law, including but not limited to California Civil Code §§ 3287, 3289 and 3302.

3. For attorneys' fees and costs of collection, pursuant to the Settlement Agreement and applicable law.

4. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including, but not limited to, the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3)(B).

## ON CLTF'S THIRD CLAIM FOR RELIEF

1. For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit

of the EMPLOYER's records, to fully cooperate with CLTF with respect to the audit in order for CLTF to determine the total amount due to the TRUST FUNDS by the EMPLOYER for its work under the Stateline Solar Project Work Site Agreement, and specifically to produce to CLTF the following payroll and business records – and any other records determined by CLTF to be necessary to conduct a full audit – for inspection, examination and copying:

    1.1.    All payroll and employee documents including, but not limited to, EMPLOYER'S payroll journals, employees earning records, certified payrolls, payroll check books and stubs, canceled payroll checks, payroll time cards, state and federal payroll tax returns, labor distribution journals and any other documents reflecting the number of hours which EMPLOYER'S employees worked, their names, social security numbers, addresses and job classifications on the project on which the employees performed their work.

    1.2.    The project files including all documents, agreements and contracts between EMPLOYER and any general contractor, subcontractor, builder and/or developer, field records, job records, notices, project logs, supervisor's diaries or notes, employees diaries, memorandum, releases and any other documents which related to the supervision of EMPLOYER'S employees on the projects on which they performed their work.

    1.3.    All EMPLOYER'S documents related to cash receipts including but not limited to, the cash receipts journals, accounts receivable journal, accounts receivable subsidiary ledgers and billing invoices relating to the projects worked on under the AGREEMENTS.

    1.4.    All EMPLOYER'S bank statements for all checking, and savings accounts relating to projects worked on under the AGREEMENTS.

    1.5.    All EMPLOYER'S documents related to cash disbursements,

313808.1

including but not limited to, vendors' invoices, cash disbursement journal, accounts payable journals, check registers and all other documents which indicate cash disbursements relating to the projects worked on under the AGREEMENTS.

    1.6.    All collective bargaining agreements between EMPLOYER and any trade union and all Monthly Report Forms submitted by EMPLOYER to any union trust fund.

2. For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

3. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

DATED:  March 20, 2017        REICH, ADELL & CVITAN
                                                 A Professional Law Corporation


                                        By: /s/Marsha M. Hamasaki
                                           MARSHA M. HAMASAKI
                                           Attorneys for Plaintiff

313808.1