JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

| | | | |
|---|---|---|---|
| **CASE NO.:** | CV 17-02160 SJO (JPRx) | **DATE:** | November 30, 2017 |
| **TITLE:** | Construction Laborers Trust Funds for Southern California Administrative Company v. Lucky Water Trucks, LLC. | | |

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                           Not Present
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**         **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT LUCKY WATER TRUCKS, LLC.** [Docket No. 24]

This matter is before the Court on Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company's ("Plaintiff") Motion for Default Several Judgment Against Defendant Lucky Water Trucks, LLC ("Motion"), filed August 25, 2017. Defendant Lucky Water Trucks, LLC ("Defendant") has failed to enter an appearance or file an opposition to the Motion. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for October 16, 2017. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** the Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

        A.      Factual Background

In the operative complaint, Plaintiff alleges the following. Plaintiff is the administrator, fiduciary, and agent for collection for several employee benefit plans, including the Laborers Health and Welfare Trust Fund for Southern California, Construction Laborers Pension Trust for Southern California, Construction Laborers Vacation Trust for Southern California, Laborers Training and Re-Training Trust Fund for Southern California, Fund for Construction Industry Advancement, Center for Contract Compliance, Laborers Contract Administration Trust Fund for Southern California, and Laborers' Trusts Administrative Trust Fund for Southern California (collectively, "Trust Funds"). (Compl. ¶ 3, ECF No. 2.) The Trust Funds were created by written agreement ("Trust Agreements") and exist pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act, 29 U.S.C. § 186. (Compl. ¶ 3.)

Defendant is a California limited liability company with its principle place of business in California. that employed laborers to perform work on certain construction projects. (Compl. ¶ 4.) In order to work on a project covered by a Project Labor Agreement known as the "Stateline Solar Project Worksite Agreement" ("Solar Project Agreement") between First Solar Electric (California) Inc.,

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
|---|---|---|---|

**CASE NO.:** CV 17-02160 SJO (JPRx)                **DATE:** November 30, 2017

and the Southern California District Council of Laborers' affiliated local union, Laborers Local Union 783 ("Union"), Defendant executed an agreement to be bound to the Solar Project Agreement on February 18, 2015 ("Agreement to be Bound"). (Declaration Higa ¶ 9, Compl. ¶ 5.) The Union is a labor organization whose members are construction industry employees and is a party to a multi-employer collective bargaining agreement ("Master Agreement"). (Dec. Higa ¶ 11.2, Ex. Work Site Agreement ¶ 1.5.) The Solar Project Agreement incorporates, by reference, the Union's Construction Master Labor Agreements ("MLA"), including one known as the Southern California Master Labor Agreement. (Compl. ¶ 5.) Pursuant to the Solar Project Agreement, Agreement to be Bound, and MLA (collectively, the "Agreements"), Defendant became obligated to comply with all of the terms and conditions of the Trust Agreements. (Compl. ¶ 6.)

The Agreements obligate Defendant to pay fringe benefit contributions ("Monthly Contributions") at the rates set forth in the Agreements for each hour worked by employees performing services covered by the Agreements ("Covered Work") and to submit monthly reports with these monthly contributions. (Compl. ¶ 7.) The Agreements provide for the payment of interest on delinquent monthly contribution from the due rate at a rate of five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California. (Compl. ¶ 8.) The Agreements also provide for the payment of liquidated damages for each month of delinquent monthly contributions of twenty percent (20%) of the delinquent monthly contributions due to the Trust Fund or $25, whichever is greater.[1] (Compl. ¶ 8.) Employers are also required to pay fees for the submission fo checks not honored by banks upon which they are drawn. (Compl. ¶ 8.)

Defendant agreed to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed, and failure to do so makes Defendant liable to the Trust Funds in at least the amount equal to the Monthly Contributions, interest, and liquidated damages that would have been due if a signatory entity had performed the Covered Work. (Compl. ¶ 10.) Under the Agreements, Defendant agreed not to subcontract Covered Work, nor allow a subcontractor to subcontract Covered Work, to entities that are not signatories to a Construction Master Labor Agreement applicable to the work performed or that are delinquent to the Trust Funds. (Compl. ¶ 10-11.)

The Agreements also provide the Trust Funds with the specific authority to examine Defendant's payroll and business records which may be pertinent to determine whether Defendant: (1) reported all hours worked by employees who perform services covered under the Agreements; and (2) abided by the Agreements' subcontracting provisions and paid the appropriate fringe benefit contributions to the Trust Funds. (Compl. ¶ 12.) The Agreements require Defendant to pay the Trust Funds' audit if they are delinquent to the Trust Funds, as well as the Trust Fund's attorneys' fees and costs of litigation to enforce the Agreements' terms. (Compl. ¶ 12-13.)

---

[1] This does not apply to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%))

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
|---|---|---|---|

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 17-02160 SJO (JPRx)</u>    **DATE:** <u>November 30, 2017</u>

Defendant submitted monthly reports to the Trust Funds on its account, but failed to pay amounts known to be due for the period of February 2015 through October 2015. (Higa Dec. ¶ 17.) On September 1, 2015, Defendant entered into a settlement agreement ("Settlement Agreement") with the Trust Funds to arrange for payment of the amounts owed during the period of February 2015 through August 2015. (Higa Dec. ¶ 19.) Defendant breached the terms of the Settlement Agreement by failing to submit its monthly payment, accurately report and pay the Monthly Contributions owed, or agree to an audit. (Higa Dec. ¶ 19.) Defendant also failed to disclose all hours worked by one of Defendant's employees. (Higa Dec. ¶ 18.)

    B.    <u>Procedural Background</u>

Plaintiff filed the instant lawsuit on March 20, 2017. (*See generally* Compl.) Plaintiff served Defendant with the Complaint on April 13, 2017. (Decl. of Marsha M. Hamasaki in Supp. of Pl.'s Mot. ("Hamasaki Decl.") ¶ 3, ECF No. 25.) After Defendant failed to respond to the Complaint, Plaintiff filed a request for the Clerk to enter default against Defendant on May 8, 2017. (Request to Clerk for Entry of Default, ECF No. 11.) Clerk entered default against Defendant on May 9, 2017. (Am. Corrected Default by Clerk, ECF No. 15.) On May 10, 2017, Plaintiff filed a Motion for Interlocutory Order for Accounting ("Accounting Mot.") seeking an audit of Defendant's records, (Accounting Mot., ECF No. 416), which the Court granted on June 14, 2017. (Order Granting Pl.'s Accounting Mot., ECF No. 55.) Defendant has not produced its records for an audit. (Higa Dec.¶ 20.) In the instant Motion, Plaintiff seeks default judgment against Defendant due to its failure to respond to the Complaint and to produce records for its audit. (*See generally* Mot.) Plaintiff also seeks Request for Judicial Notice of the Audit Order and the Declaration of Yvonne Higa in support of the Audit Order. (ECF No. 28.)

    C.    <u>Judicial Notice</u>

Plaintiff filed a Request for Judicial Notice in which it asks the Court to take judicial notice of two documents. (See Req. for Judicial Notice in Supp. of Mot. for Default Judgment ("RJN"),ECF No. 28.) Pursuant to Federal Rule of Evidence 201, the Court "must take judicial notice if a party requests it," of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)-(c). Here, Plaintiff requests the Court to take judicial notice of :

    (1)    Interlocutory Order for Accounting (RJN, Ex. A, ECF No. 21.)
    (2)    Declaration of Yvonne Higa in Support of Plaintiff's Motion for Interlocutory Order for Accounting (RJN, Ex. B, ECF No. 18.)

The Court takes judicial notice of these documents as they are true and correct copies of official court records of the United States District Court for the Central District of California, whose

Case 2:17-cv-02160-SJO-JPR    Document 30    Filed 11/30/17    Page 4 of 14    Page ID #:435

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: **CV 17-02160 SJO (JPRx)**          DATE: **November 30, 2017**

authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Fed R. Evid. 201(b); *Castillo-Viallagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992); *see also Hunt v. Check Recovery Sys. Inc.*, 478 F. Supp. 2d 1157, 1160 (N.D. Cal. 2007) ("Judicial notice maybe taken of 'adjudicative facts' such as court records, pleadings . . . .").

II.    DISCUSSION

Obtaining a default judgment is a two-step process. *See* Fed. R. Civ. P. 55. First, the plaintiff must establish default by affidavit or otherwise, after which the court clerk enters default. Fed. R. Civ. P. 55(a). Second, the plaintiff must apply to the court for a default judgment if the plaintiff's claim is for a sum that is not certain or a sum that cannot be made certain by computation. Fed. R. Civ. P. 55(b).

    A.    Procedural Requirements for Default Judgment

Pursuant to the Local Rules of the Central District of California, applications for default judgment must be accompanied by a declaration that includes the following information:

   (a) When and against what party the default was entered;
   (b) The identification of the pleading to which default was entered;
   (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;
   (d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and
   (e) That notice has been served on the defaulting party, if required by [Fed. R. Civ. P.] 55(b)(2).

L.R. 55-1. Plaintiff has satisfied these procedural requirements by establishing the following: (1) default was entered against Defendant on May 9, 2017; (2) default was entered as to the Complaint; (3) Defendant is not an infant or incompetent person; and (4) the Servicemembers Civil Relief Act does not apply because Defendant is not a person serving in military service. (Hamasaki Decl. ¶¶ 4-6.) Since Defendant has not appeared in this action, Plaintiff is not required to serve Defendant with notice of the Motion. *See* Fed. R. Civ. P. 55(b)(2). Nonetheless, Plaintiff is serving Defendant with notice of the Motion. (Hamasaki Decl. ¶ 10.) Accordingly, the Court concludes that the procedural requirements of Local Rule 55-1 have been met.

    B.    Substantive Requirements for Default Judgment

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only | \_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_ |
|---|---|---|---|

CASE NO.: <u>CV 17-02160 SJO (JPRx)</u>            DATE: <u>November 30, 2017</u>

A district court's decision to grant or deny default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted). In exercising its discretion, a court considers the following seven factors:

> (1) [T]he possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). Once the court clerk has entered a party's default, "the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Discovery Commc'ns, Inc. v. Animal Planet, Inc.,* 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001)). The Court considers each of the *Eitel* factors in turn.

### 1. Possibility of Prejudice to Plaintiff

Under the first *Eitel* factor, the Court examines whether Plaintiff will be prejudiced if the request for entry of default judgment is denied. *See Eitel*, 782 F.2d at 1471. A plaintiff who is denied a default judgment and is subsequently left without other recourse for recovery has a basis for establishing prejudice. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, because Defendant has failed to appear or respond to Plaintiff's Complaint (Hamasaki Decl. ¶ 4), if Plaintiff's Motion is denied, Plaintiff could be subsequently left without other recourse for recovery. *See PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, the Court finds that Plaintiff has a basis for establishing prejudice.

### 2, 3. Merits of the Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of a plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. Together, "these two factors require that a plaintiff 'state a claim on which the plaintiff may recover.'" *PepsiCo*, 238 F. Supp. 2d at 1175 (citations and formatting omitted). After default has been entered by the clerk, courts accept the well-pleaded factual allegations of the complaint, except for those allegations relating to damages, as true. *See TeleVideo Sys.*, 826 F.2d at 917-18.

In the Complaint, Plaintiff brought causes of action for: (1) violation of 29 U.S.C. § 1145 ("Section 1145") for unpaid fringe benefit contributions and related damages due to the Trust Funds; and (2) breach of the Settlement Agreement. (Compl. ¶¶ 14-29.)

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | \_\_\_\_ |
| Send | \_\_\_\_ |
| Enter | \_\_\_\_ |
| Closed | \_\_\_\_ |
| JS-5/JS-6 | \_\_\_\_ |
| Scan Only | \_\_\_\_ |

CASE NO.: <u>CV 17-02160 SJO (JPRx)</u>     DATE: <u>November 30, 2017</u>

    a.    <u>Section 1145</u>

Pursuant to its first cause of action against Defendant, Plaintiff seeks relief for Defendant's failure to make the payments to the Trust Funds for fringe benefit contributions specified in the Agreements, alleging that this omission violates Section 1145. (See Compl. ¶¶ 14-17.) Thus, the Court must examine whether Plaintiff has sufficiently pleaded facts that permit recovery pursuant to this claim.

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. A plaintiff may bring an action for violation of Section 1145 where an employer fails to fulfill his obligation to contribute to the employee benefit plan. *Felton v. Unisource Corp.*, 940 F.2d 503, 511 (9th Cir. 1991); *see also Bd. of Trs. v. Energy Mgmt.*, No. CV 11-05251 DMR, 2012 WL 1657523, at * 2 (N.D. Cal. May 10, 2012).

Plaintiff alleges the following in support of its Section 1145 claim. First, Defendant became bound by the Solar Project Agreement when it began working on a project covered by the Solar Project Agreement between First Solar Electric (California) Inc., and the Union. (Compl. ¶ 5.) The Solar Project Agreement incorporates by reference the Union's Construction Master Labor Agreements, which obligated the Defendant to all the terms and conditions of the Trust Agreements, which created each of the Trust Funds. (Compl. ¶ 6.) Second, under the Agreements, Defendant became obligated to pay fringe benefit contributions at the rates set forth in the Agreements for each hour worked by employees who performed services covered by the Agreements. (Mem. of P. & A. in Supp. of Mot. ("Mem.") 2, ECF No. 27; Comp. ¶ 7.) Third, Defendant employed workers covered by the Agreements and failed to pay fringe benefits specified in the Agreements on behalf of all such workers to the Trust Funds. (Compl. ¶ 15.) Thus, Plaintiff has sufficiently pled a claim for relief under Section 1145 upon which it may recover. *See PepsiCo*, 238 F. Supp. 2d at 1175.

    b.    <u>Breach of Settlement Agreement</u>

California has a strong policy in favor of enforcing settlement agreements. *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357 (2007). To that end, the inherent authority of district courts to enforce valid settlement agreements in pending actions has long been recognized. *See MetroNet Servs. Corp. v. U.S. West Comms.*, 329 F.3d 986, 1013–14 (9th Cir. 2003) (cert. granted and judgment vacated on other grounds by *Quest Corp. v. MetroNet Servs. Corp.*, 540 U.S. 1147 (2004); *see also In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). It is well established that when the parties execute a complete, written agreement, it is enforceable in the same manner as any other written contract, and courts may admit all relevant evidence, as they would in any other contract enforcement proceeding. (*See also* C.D. Cal. General Order No. 11-10.) Consequently,

Case 2:17-cv-02160-SJO-JPR Document 30 Filed 11/30/17 Page 7 of 14 Page ID #:438

| | | |
|---|---|---|
| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

**CASE NO.:** CV 17-02160 SJO (JPRx)        **DATE:** November 30, 2017

the fact that a more formal agreement may be contemplated does not alter the validity of an agreement whose terms meet the requisite definiteness. *Blix Street Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48–49 (2010).

A settlement agreement must meet two general requirements to be enforceable. First, it must be a complete agreement. *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir.1994). Second, the parties must have either agreed to its terms, or authorized their respective counsel to effectuate settlement. *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144–45 (9th Cir.1977). As long as a complete agreement or "meeting of the minds" has been reached as to the essential terms of the settlement, it is enforceable. *Cf. Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987) ("[T]he district court may enforce only complete settlement agreements."). To that end, California law permits parties to bind themselves to a contract even if they anticipate that certain aspects of the deal be reduced to a further writing thereafter. *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038 (9th Cir. 2011).

In California, parties "seek to enforce a settlement agreement by . . . prosecuting an action for breach of contract." *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 306 (1999). If a contract is validly formed, "a breach [is] defined as an unjustified or unexcused failure to perform all or any part of what is promised in a contract." *Sackett v. Spindler*, 248 Cal. App. 2d 220, 227 (1967). As such, every instance of noncompliance with a contract's terms constitutes a breach. *See Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (1987). To state a cause of action for breach of a settlement agreement, a party must plead: (1) the existence of the contract; (2) performance by the alleging party or excuse for nonperformance; (3) breach by the opposing party; and (4) damages. *First Comm'n Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

Plaintiff alleges the following in support of its breach of settlement agreement claim. The Trust Funds and Defendant entered into the Settlement Agreement. (Compl. ¶ 19.) Under the terms of the Settlement Agreement, the Trust Funds agreed to waive a portion of the Defendant's then-known delinquency upon, and conditioned upon, the Defendant's full performance of the terms of the Settlement Agreement, including but not necessarily limited to payment of a portion of the then-known delinquency in monthly installments ("Payment Plan") and compliance with the terms of the Monthly Reporting, Monthly Contribution and audit provisions of the Agreements during a "Compliance Period" extending through the term of the Payment Plan and the date of payment of any delinquent amounts determined to be due by a "Compliance Audit" following remittance of the payment plan installments. (Compl. ¶ 19.) Plaintiff alleges that Defendant breached the Settlement Agreement in at least the following ways: (a) failing, without cure, to timely submit Monthly Reports disclosing all of the work for which Monthly Contributions are due with payment of the Monthly Contributions due; and (b) failing to provide the Trust Funds with access to its books and records to complete the Compliance Audit. (Compl. ¶ 22.) Plaintiff alleges that the amount due by Defendant for its breach of the Settlement Agreement is

| | | |
|---|---|---|
| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority ___<br>Send ___<br>Enter ___<br>Closed ___<br>JS-5/JS-6 ___<br>Scan Only ___ |

CASE NO.: **CV 17-02160 SJO (JPRx)**        DATE: **November 30, 2017**

$11,209.48 as of February 9, 2017, plus additional interest thereafter. (Compl. ¶ 23.) Thus, Plaintiff has sufficiently pled a claim for relief for breach of the Settlement Agreement upon which it may recover. *See First Comm'n Mortg. Co.*, 89 Cal. App. 4th at 745.

      4.      <u>Amount of Damages</u>

Per the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [the d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is warranted." *ACS Recovery Servs., Inc. v. Kaplan,* No. CV 09-01304 JSW, 2010 WL 144816, at *6 (N.D. Cal. Jan. 11, 2010) (citing *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller,* No. CV 97-02661 VRW, 1997 WL 797922, at *1 (N.D. Cal. Dec. 15, 1997)).

Here, Plaintiff seeks damages for unpaid fringe contributions, liquidated damages, interest, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorney's fees and costs, and amounts owed as a result of work performed by Defendant's subcontractors. (Mem. 4-5; Compl. ¶ 16.)

Specifically, Plaintiff requests: (1) $12,063.03 in general damages consisting of fringe benefits ($7,162.92) and liquidated damages ($4,900.11); (2) $1,263.10 in interest through October 31, 2016; (3) $1,323.78 in attorney's fees; and (4) $560.08 in costs, for a total judgment sum of $15,209.99. (Hamasaki Decl. ¶¶ 13-14.) These damages arise from Defendant's failure to pay fringe benefits incurred during the period from February 2015 to October 2015. (Hamasaki Decl. ¶ 14.1.)

29 U.S.C. § 1132(g) describes the types of relief the courts may award an employee benefit plan in an action for delinquent contributions. Section 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [S]ection 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>     (A) the unpaid contributions,
>     (B) interest on the unpaid contributions,
>     (C) an amount equal to the greater of–
>         (i) interest on the unpaid contributions, or
>         (ii) liquidated damages provided for under the plan in an amount not
>         in excess of 20 percent (or such higher percentage as may be
>         permitted under Federal or State law) of the amount determine by the
>         court under subparagraph (A),

Case 2:17-cv-02160-SJO-JPR Document 30 Filed 11/30/17 Page 9 of 14 Page ID #:440

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: <u>CV 17-02160 SJO (JPRx)</u>          DATE: <u>November 30, 2017</u>

      (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
      (E) such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan.

29 U.S.C. § 1132(g)(2). Thus, the types of damages Plaintiff seeks are appropriate under Section 1132(g)(2) and within the Court's discretion.

Further, "where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Bd. of Trs. v. Core Concrete Constr., Inc.,* No. CV 11-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech., Inc.*, No. CV 10-02212 EMC, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011)). Here, the Court finds that the damages amounts sought by Plaintiff are appropriate because they are: (1) supported by the evidence; and (2) provided for under the Agreements and 29 U.S.C. § 1132(g)(2). *See Core Concrete*, 2012 WL 380304, at *4. Accordingly, this factor weighs in favor of entering default judgment.

      5.    <u>Possibility of Dispute Concerning Material Facts</u>

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *TVB Holdings (USA), Inc. v. eNom, Inc.,* No. CV 13-00624 JLS, 2014 WL 3717889, at *3 (citing *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1060-61 (N.D. Cal. 2010); *Landstar Ranger, Inc. v. Parth Enters., Inc.,* 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010)). Here, Plaintiff's claims are well-pleaded and supported by Plaintiff's allegations as well as evidence. Thus, a dispute concerning material facts is unlikely, and the Court finds that this factor weighs in favor of entering default judgment.

      6.    <u>Possibility of Excusable Negligence</u>

The sixth *Eitel* factor considers whether the defendant's default is the result of excusable neglect. *Eitel*, 782 F.2d at 1472. "This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *TVB Holdings,* 2014 WL 3717889, at *4 (citing *Landstar Ranger,* 725 F. Supp. 2d at 922). Plaintiff filed the instant lawsuit on March 20, 2017, (*see generally* Compl.), and served Defendant with the Complaint on April 24, 2017. (ECF No. 9.) Defendant has failed to appear in this action or respond to the Complaint. (Hamasaki Decl. ¶ 4.) Because Defendant has failed to enter an appearance or file an answer to Plaintiff's complaints despite having ample opportunity to respond, the possibility of excusable neglect is remote and this factor favors entry of default judgment.

| | | |
|---|---|---|
| JS-6 | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES - GENERAL** | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

**CASE NO.:** <u>CV 17-02160 SJO (JPRx)</u>     **DATE:** <u>November 30, 2017</u>

      7.      <u>Public Policy Favoring Decision on the Merits</u>

The final *Eitel* factor requires the Court to consider the strong federal policy in favor of making decisions on the merits. *Eitel*, 782 F.2d at 1472. Courts have recognized, however, that "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, a defendant's failure to answer a plaintiff's complaint "makes a decision on the merits impractical, if not impossible." *Id; see also TVB Holdings*, 2014 WL 3717889, at *4. Under Rule 55(a), "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *PepsiCo*, 238 F. Supp. 2d at 1177. Given that Defendant has failed to file an answer to Complaint or oppose the instant Motion, this factor is neutral.

On balance, the Court finds that the application of the *Eitel* factors to this case entitles Plaintiff to default judgment against Defendant on its claims

      C.      <u>Relief Sought</u>

The Court now turns its attention to the relief sought by Plaintiff. Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Additionally, the pleadings must specifically state the relief sought, *see* Fed. R. Civ. P. 8(a)(3), and Plaintiff must provide evidence to support its request for damages. *See Landstar Ranger*, 725 F. Supp. 2d at 920 ("Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party."). The Court, therefore, must assess the sufficiency of Plaintiff's evidence in support of its claim for relief.

      1.      <u>General Damages</u>

First, Plaintiff requests $12,063.03 in general damages, consisting of unpaid fringe benefits ($7,162.92) and liquidated damages ($4,900.11). (Hamasaki Decl. ¶ 13.A.) Based on the Ninth Circuit's holding in *Waggoner v. C&D Pipeline Company*, 601 F.2d 456 (9th Cir. 1979), Plaintiff argues that it is entitled to rely on Defendant's records to determine the damages resulting from its failure to pay fringe benefits under the Agreements. (Mem. 3-4.) In *Waggoner*, the Ninth Circuit stated that "[a] requirement that contributions be based on all hours worked or paid permits the trustees to rely on payroll records to determine if employers are making the proper contributions to the trust funds." 601 F.2d at 459. Thus, "trustees may rely on payroll records to determine if employers are making proper contributions." *Operating Eng'rs Pension Trust v. Moine Bros. Excavators, Inc.*, No. CV 85-04492 DWN, 1986 WL 15442, at *1 (C.D. Cal. Sept. 25, 1986) (citation omitted); *see also Trs. of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for S. Nev.*, No. CV 11-00510 GMN, 2011 WL 6026613, at *4 (D. Nev. Dec. 2, 2011).

| | | |
|---|---|---|
| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

CASE NO.: <u>CV 17-02160 SJO (JPRx)</u>                    DATE: <u>November 30, 2017</u>

The Court is satisfied that Plaintiff has provided sufficient evidence to prove the requested damages, including relevant provisions of the: (1) Solar Project Agreement (Higa Decl. ¶ 9, Ex. 1); (2) Agreement To Be Bound (Higa Decl. ¶ 10, Ex. 2); (3) Southern California Master Labor Agreement (Higa Decl. ¶ 12, Ex. 3); (4) Trust Agreements (Higa Decl. ¶ 13.3, Ex. 4); and (5) Settlement Agreement. (Higa Decl. ¶ 19, Ex. 7). Thus, the Court awards Plaintiff $12,063.03 in general damages.

      2.    <u>Interest</u>

Second, Plaintiff requests interest in the amount of $1,263.10. (Hamasaki Decl. ¶ 13.A.2.) The Agreements provide that Defendant is obligated to pay interest on the unpaid contributions at a rate of five percent over the rate set by the Federal Reserve Board for advances to member banks, effective on the date of the delinquency. (Higa Decl. ¶ 15, Ex. 3.) Thus, the plan's interest rate since February 19, 2010 has been 5.75%. (Higa Decl. ¶ 23-24.) Plaintiff has calculated interest from the due date of the contribution owed through the date payment was recovered by the Trust Funds for paid contributions, and through August 23, 2017 for unpaid contributions, at the current plan rate of 5.75%. (Higa Decl. ¶ 23-24, Ex. 5.1, 5.7, 8.1-8.2.) The Court is satisfied that Plaintiff has provided sufficient evidence to demonstrate that it is entitled to the interest due on the unpaid fringe benefits. Based on the above calculations, the Court awards Plaintiff $1,263.10 in interest.

      3.    <u>Attorney's Fees</u>

Third, Plaintiff requests $1,323.78 in attorney's fees. (Hamasaki Decl. ¶ 21.c.) Attorney's fees in default judgments are set by Local Rule 55-3. Absent special circumstances, in judgments between $10,000.01 and $50,000.00, the court sets attorney's fees at $1,200.00 plus six percent of the amount awarded over $10,000.00. *See* L.R. 55-3. This calculation "shall be applied to the amount of the judgment exclusive of costs." L.R. 55-3. Because Plaintiff's requested attorney's fee is in accord with the Local Rule,[2] the Court awards Plaintiff $1,323.78 in attorney's fees.

      4.    <u>Court Costs</u>

Finally, Plaintiff requests $560.08 in court costs. (Hamasaki Decl. ¶ 13.4.) The Court finds that Plaintiff has provided sufficient evidence to prove the requested amount of court costs, including: (1) the $400.00 filing fee (Hamasaki Decl. ¶ 13.4.i, Ex. 5.1); (2) $8.58 for service of the Complaint on Defendant (Hamasaki Decl. ¶ 13.4.ii, Ex. 5.2); and (3) $57.50 for service of the

---

[2] $12,063.03 - $10,000 = $2,063.03 x 0.06 = $123.78 + $1,200 = $1,323.78.

| | | |
|---|---|---|
| JS-6 | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES - GENERAL** | Priority ___<br>Send ___<br>Enter ___<br>Closed ___<br>JS-5/JS-6 ___<br>Scan Only ___ |

**CASE NO.:** <u>CV 17-02160 SJO (JPRx)</u>         **DATE:** <u>November 30, 2017</u>

Interlocutory Order for Accounting on Defendant. (Hamasaki Decl. ¶ 13.4.iii, Ex. 5.3). Thus, the Court awards Plaintiff $560.08 in court costs.

     5.    <u>Final Order for Accounting</u>

The Court previously ordered an Interlocutory Order for Accounting on June 14, 2017, with which Defendant has not complied. (ECF No. 21.) Plaintiff seeks to conduct an audit of Defendant's employment-related documents, based on 29 U.S.C § 1159 and the terms of the Master Labor Agreement and Trust Agreements. "The Supreme Court has made clear that trust documents, if consistent with [ERISA], govern the scope of the trustee's rights and duties." *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990) (ordering an audit where "the Trust Agreement gives the Trustees the right to audit an employer's books and records").

The Southern California Master Labor Agreement ("MLA") provides:

> the Trustees shall have authority to audit Contractor records to determine the appropriate contributions and shall have specific authority to examine the Contractor's records, including but not limited to all payroll records (including certified payroll records, electronic payroll records, and all records reflecting payments to trust funds other than the Laborer Trust Funds of Southern California Federal W-2 Forms, Forms 1099 and 1096, Quarterly State Tax returns, and time cards), all cash disbursement ledgers, all canceled checks, check registers, invoices and bank checking account statements. . . . The Trustees may file suit to enforce this obligation, and, if successful, shall recover their attorney's fees and costs, whether or not the audit reveals a delinquency. Any Contractor delinquent under this Article may be required by the Trust Funds to submit, in addition to regular reports, payroll breakdowns by job, and the failure to submit timely job breakdowns shall be considered a delinquency under this Article. . . .

(MLA Art. XXV § J, filed as Higa Decl. Ex. 3.) The Agreement Declaration of Trust for the Health and Welfare Fund states:

> The Trustees may, at reasonable times and during normal business hours, audit or cause the audit or inspection of the records of any such parties which may be pertinent in connection with said contributions and/or reports insofar as may be necessary to accomplish the purposes of this Trust Agreement. In the event such audit shall disclose that the Employer is in default in the payment of his contributions . . . the Employer shall, upon demand, pay to the Fund the actual costs of such audit.

(Agreement Decl. Of Trust for the Health and Welfare Fund Art VI, § 7, filed as Higa Decl. Ex. 4.) In addition, ERISA requires Defendant to "maintain records with respect to each of his employees

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** CV 17-02160 SJO (JPRx)  **DATE:** November 30, 2017

sufficient to determine the benefits due or which may become due to such employees. The plan administrator shall make a report, in such manner and at such time as may be provided in regulations prescribed by the Secretary, to each employee who is a participant under the plan . . . . The employer shall furnish to the plan administrator the information necessary for the administrator to make the reports required by the preceding sentence." 29 U.S.C. § 1059(a)(1).

Plaintiff states that check stubs submitted by Defendant's employee disclosed that Defendant did not accurately report and pay the Monthly Contributions owed to the Trust Funds covering the period from February 2015 to December 2015 and that Defendant has failed to submit reports to the Trust Funds since December 2015. (Higa Decl. ¶ 20.) Plaintiff requests that Defendant produce its records in order to determine whether any contributions are owed on behalf of employees. (Higa Decl. ¶ 20.) Accordingly, Plaintiff seeks to conduct an audit of the period from February 18, 2015 to the date of the audit. Plaintiff asks to audit the following documents:

(1) All of Defendant's payroll and employee documents, including but not limited to payroll journals, employee earning records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns, as well as labor distribution journals and any other documents that provide the names, addresses, social security numbers, job classification or the number of hours worked by any one or more of Defendant's employees;
(2) Defendant's job files relating to its work on the Project, including all documents, agreements and contracts between Defendant and any general contractor, or any subcontractor, on the Project, the daily work logs, supervisor's diaries or notes, employees diaries, memorandum, releases and any other documents which related to the supervision of Defendant's employees and the Project;
(3) All of Defendant's documents related to cash receipts, including but not limited to the cash receipts journals, accounts receivable journal, accounts receivable subsidiary ledgers and billing invoices for Defendant's work on the Project;
(4) All of Defendant's bank statements for all checking, savings and investment accounts;
(5) All of Defendant's documents related to cash disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers, cancelled checks and all other documents which indicate cash disbursements;
(6) All Monthly Report Forms submitted by Defendant to any union trust fund;
(7) Documents, records, or other writings pertaining to and including the checks/payments issued to any person, company and/or subcontractor relating to work performed on Defendant's construction projects, including but not limited to day laborers, or other non-union workers hired to work on Defendant's projects.

| | | |
|---|---|---|
| **JS-6** | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES - GENERAL** | **Priority** \_\_\_\_\_<br>**Send** \_\_\_\_\_<br>**Enter** \_\_\_\_\_<br>**Closed** \_\_\_\_\_<br>**JS-5/JS-6** \_\_\_\_\_<br>**Scan Only** \_\_\_\_\_ |

**CASE NO.:** <u>CV 17-02160 SJO (JPRx)</u>          **DATE:** <u>November 30, 2017</u>

(Declaration of Yvonne Higa in Support of Plaintiff's Motion for Interlocutory Order for Accounting ¶ 12, ECF No. 18.) Pursuant to the terms of the Agreements and 29 U.S.C. § 1059(a)(1), the Court hereby **GRANTS** Plaintiff's request and orders Defendant to submit to an audit by Plaintiff for the period from February 18, 2015 to the date of the audit, of the documents requested above.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Several Judgment. The Court hereby **ORDERS** Defendant to pay Plaintiff $12,063.03 in general damages, $1,263.10 in interest, $1,323.78 in attorney's fees, and $560.08 for court costs, for a total monetary judgment of $15,209.99. The Court **ORDERS** Defendant to submit to an audit by Plaintiff for the period from February 18, 2015 to the date of the audit of the documents requested by Plaintiff.

IT IS SO ORDERED.